IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA
MISC. #

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| | ) | Civil Action No. 05-944-RET-DLD (M.D. LA) |
| v. | ) | |
| | ) | CONSOLIDATED WITH |
| DELOITTE & TOUCHE USA LLP, | ) | |
| | ) | Civil Action No. 07-405-RET-DLD; and |
| | ) | Civil Action No. 06-258-RET-DLD |
| | ) | |
| Respondent. | ) | |
| | ) | |

## UNITED STATES' MOTION TO COMPEL
## DELOITTE & TOUCHE USA LLP TO PRODUCE DOCUMENTS

In accordance with Fed. R. Civ. P. 37, the United States moves for an order compelling

Deloitte & Touche USA LLP to produce certain documents maintained at its Zurich, Switzerland

affiliate that it refused to produce in response to a subpoena duces tecum issued by this Court. In

addition, the United States seeks to compel the production of three documents that Deloitte &

Touche USA LLP is currently withholding on the basis of privilege. As demonstrated in the

accompanying memorandum of law, any responsive documents located at its Zurich, Switzerland

affiliate are within the "possession, custody, or control" of Deloitte & Touche USA LLP and as

such, must be produced. As for the three documents Deloitte & Touche USA LLP is withholding

on privilege grounds, none is protected by the attorney-client privilege, the work-product

doctrine, or the tax practitioner's privilege, as asserted. Thus all are discoverable by the United

States.

In addition to the memorandum of law, the United States has attached in support of this

motion the declaration of Thomas F. Koelbl, a Fed. R. Civ. P. 37(a)(1) certification,

Government's Exhibits 1 through 24, which are incorporated herein by reference, and a proposed

order.

Respectfully submitted,

UNITED STATES OF AMERICA, by

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY

Thomas F. Koelbl
Deborah M. Morris
Robert L. Welsh
Trial Attorneys, Tax Division
U.S. Department of Justice
Post Office Box 14198
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 514-5891
          (202) 353-1758
          (202) 514-6068
Fax: (202) 514-9868

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA
MISC. #

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| | ) | Civil Action No. 07-405-RET-DLD (M.D. LA) |
| v. | ) | |
| | ) | CONSOLIDATED WITH |
| DELOITTE & TOUCHE USA LLP, | ) | |
| | ) | Civil Action No. 05-944-RET-DLD; and |
| | ) | Civil Action No. 06-258-RET-DLD |
| | ) | |
| Respondent. | ) | |
| | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF UNITED STATES' MOTION TO COMPEL DELOITTE & TOUCHE USA LLP TO PRODUCE DOCUMENTS

### INTRODUCTION

This case concerns adjustments made by the Internal Revenue Service to the partnership tax returns of Chemtech Royalty Associates, L.P. and Chemtech II, L.P., for the years 1993 through 2003. Chemtech was initially formed in 1993 between three wholly-owned subsidiaries of The Dow Chemical Company – Ifco, Inc., Diamond Technology Partnership Corp., and Dow Europe, S.A. Dow contributed patents to the partnership, and then entered into a license whereby it leased back those patents in exchange for royalty payments to Chemtech.

After the initial formation of Chemtech by Dow, five foreign banks entered into the Chemtech transaction by loaning $200 million to the partnership in exchange for "partnership interests".[1] During the operation of Chemtech, Dow made regular royalty payments to

---

[1] The five foreign banks were Rabo Bank, Bank Brussels Lambert, Kredietbank, NatWest, and Dresdner Bank.

Chemtech, for which Dow then claimed a deduction on its U.S. income tax return. Chemtech, in turn, allocated most of its taxable income to the five foreign banks, who were not required to pay tax on those allocated amounts.[2] Accordingly, Dow realized the benefit of the income tax deduction, without having to bear the burden of including most of the partnership's taxable income on its income tax return.

In 1998, Dow terminated the Chemtech transaction and began the Chemtech II transaction. After the five foreign banks exited the transaction in March 1998, Dow removed the patent assets and added plant assets, which had been largely depreciated for U.S. tax purposes. Improperly utilizing partnership tax provisions, Dow transferred the tax basis of certain partnership assets being removed from the Chemtech partnership to the plant assets being added to Chemtech II. Chemtech II then took depreciation deductions for the plant assets (even though the assets had been previously depreciated). Like Chemtech, Dow again entered into a lease with Chemtech II to lease back property which it already owned. Again, Dow deducted the lease payments on its income tax return. Thus, in the Chemtech II transaction, the depreciation deductions offset the rental income of Chemtech II, which resulted in little, if any, taxable income to the partnership. Dow on the other hand, again realized the benefit of an artificial income tax deduction to offset other taxable income as a result of the lease payments it deducted on its corporate tax return.

On audit, the IRS adjusted the partnership returns for several reasons. Many of the legal theories supporting those adjustments overlap and relate to whether the arrangements were

---

[2]The banks did not, in fact, receive all of that income – rather the actual cash received was largely a pre-set return on the $200 million loan.

legitimate partnerships for federal tax purposes. Chemtech and Chemtech II (collectively

"Chemtech"), through their tax matters partners Dow Europe, S.A. and Ifco, Inc. respectively,

filed suit in the United States District Court for the Middle District of Louisiana challenging

those adjustments. Ultimately, the issue before the court in Louisiana is the correct treatment of

the allocations of income and other partnership items.

Through its audits of Dow, the IRS learned that Deloitte & Touche is Dow's independent

auditor. Deloitte & Touche has served as Chemtech's independant auditor since the inception of

the transactions at issue in this case. According to its web site (www.deloitte.com), "Deloitte" is

the brand under which independent firms throughout the world collaborate to provide audit,

consulting, financial advisory, risk management, and tax services to clients. These firms are all

members of Deloitte Touche Tohmatsu ("DTT"), a Swiss Verein. Each member firm provides

services in a particular geographic area and is subject to the laws and professional regulations of

the particular country or countries in which it operates. DTT helps coordinate the activities of

the member firms but does not itself provide services to clients.

As Deloitte's web site explains, Deloitte LLP is the member firm of DTT in the United

States. Like DTT, Deloitte LLP does not provide services to clients. Instead, services are

primarily provided by the subsidiaries of Deloitte LLP, including: Deloitte & Touche LLP,

Deloitte Consulting LLP, Deloitte Financial Advisory Services LLP, and Deloitte Tax LLP.

Deloitte LLP helps coordinate the activities of these subsidiaries. Deloitte LLP and these

subsidiaries are separate legal entities. Each of these companies is organized under Delaware

law, is separately capitalized, has its own Chairman and CEO and Board of Directors, and

-3-

provides a distinct array of services. Deloitte LLP was formerly known as Deloitte & Touche USA LLP.

On September 20, 2007, the United States served a subpoena duces tecum issued from this Court on Deloitte & Touche USA, LLP ("D&T USA") at its Washington, D.C. office. (Gov. Ex. 1.) The subpoena requested documents from Deloitte related to the Chemtech transactions in dispute. In particular, the subpoena contained twenty document requests, all related to Dow (in connection with Chemtech), Chemtech, and Chemtech Portfolio, including "[a]ll documents provided to you by Dow (or any other entity) related to an audit, exam or other review of Dow (in connection with Chemtech), Chemtech, and Chemtech Portfolio."[3] (Id., ¶ 19.) The subpoena broadly referred to Deloitte as "Deloitte Touche Tohmatsu, S.V., its member firms and their respective subsidiaries and affiliates, and includes partners, principals, employees and any other representative." (Id., ¶A.)

On September 28, 2007, D&T USA responded to the subpoena with several objections. (Gov. Ex. 2.) Among those, D&T USA objected to the subpoena to the extent that it requires the "Deloitte US Firms" to search the offices of other related entities. (Id.) D&T USA also requested more time to respond to the subpoena. (Id.) Thereafter, on December 21, 2007, D&T USA produced almost 3,000 pages of documents in response to the subpoena. In its cover letter sent with the documents, D&T USA explained that it was withholding certain documents on privilege grounds, but would rely on the plaintiff's counsel to prepare and produce a privilege log identifying those documents. (Gov. Ex. 3.)

---

[3]"Chemtech Portfolio" is a subsidiary of Chemtech.

On January 11, 2007, D&T USA provided a privilege log prepared by counsel for the plaintiff. The privilege log identified three documents withheld by D&T USA (the "withheld documents"). (Gov. Ex. 4.) The first document is described as a June 20, 2005 tax opinion from the plaintiff's counsel, McKeeNelson LLP, to William L. Curry. (Id.) The second document is described as a September 15, 1998 memorandum and flow chart from Michael Cone and Craig Jones to "File." (Id.) The third document is described as a July 21, 1993 draft memorandum from Robert V. Valdez to "File." (Id.) According to the privilege log, the documents are protected by the attorney-client and attorney-work-product privileges because each is a "[c]onfidential communication between client and lawyer for purposes of facilitating the rendition of legal services or legal advice to the client," and "prepared in the anticipation of litigation."[4] (Id.) Additionally, the "7525 Tax Practitioner's Privilege" is claimed for the September 15, 1998 memorandum and flow chart on the basis that the document is a "[c]onfidential communication between client and federally authorized tax practitioner, or between federally authorized tax practitioners, for purposes of facilitating the rendition of tax advice to the client." (Id.) The subject matter of all three documents is described simply as "Tax issues related to the Chemtech partnership." (Id.)

As later clarified in conversations with counsel for the United States, D&T USA's December 21, 2007 production did not contain documents from any of its foreign affiliates, and we understand that Deloitte made no request for responsive documents to any of its foreign affiliates, including its Zurich, Switzerland affiliate ("D&T Zurich"). (Koelbl Decl. ¶10.)

---

[4] William Curry and Craig Jones were attorneys in Dow's tax department during the Chemtech transaction. Upon information and belief, Michael Cone was a Dow accountant. Robert Valdez's title and employer are unknown.

Thereafter, on April 29, 2008, the United States–having previously learned that Dow Europe had engaged D&T Zurich in connection with the Chemtech partnerships–served a document request on the plaintiff for all workpapers and correspondence prepared by D&T Zurich concerning Chemtech and Chemtech II. (Gov. Ex. 5.) The plaintiff responded that it requested the documents directly from D&T Zurich, but that "[it] has refused to produce the requested documents unless compelled to do so pursuant to a statutory or regulatory obligation or an order of the relevant court." (Gov. Ex. 6.)

On June 20, 2008, the United States, in an attempt to resolve the impasse, again requested that D&T USA produce the withheld documents and documents from D&T Zurich responsive to the United States' subpoena. (Gov. Ex. 7.) D&T USA responded on June 26, 2008 that it will not produce the withheld documents the plaintiff contends are privileged. (Gov. Ex. 8.) It further stated that it has not requested responsive documents from D&T Zurich and that it has no control over any such documents. (Id.) Accordingly the United States now moves to compel D&T USA to produce the withheld documents and any responsive documents of D&T Zurich (the "Zurich documents").

## ARGUMENT

**I.    The withheld documents are not protected by the attorney-client privilege, the work-product doctrine, or the tax practitioner's privilege and must be produced**

D&T USA asserts that it cannot produce the withheld documents because Chemtech has claimed they are protected by the attorney-client privilege, the work-product doctrine, and, in the case of the September 15, 1998 document, the tax practitioner's privilege. However, as

demonstrated by the privilege log, the plaintiff disclosed all of the withheld documents to a thirty party, D&T USA.  Consequently, any privilege has been waived.

      A.    <u>Chemtech waived any attorney-client privilege by disclosing the withheld documents to D&T USA</u>

The attorney-client privilege protects confidential communications made between clients and their attorneys when the communications are for the purpose of securing legal advice or services.  <u>In re Lindsey</u>, 158 F.3d 1263, 1267 (D.C. Cir. 1998).  The privilege applies "only if the person to whom the communication was made is a member of the bar of a court who in connection with the communication is acting as a lawyer and the communication was made for the purpose of securing primarily either (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding."  <u>Id</u>. at 1270 (internal quotations omitted).  Further, "[i]t is settled law that the party claiming the privilege bears the burden of proving that the communications are protected," and "a blanket assertion of the privilege will not suffice."  <u>Id</u>. Here, D&T USA, as the proponent of the privilege, must "conclusively prove each element of the privilege."  <u>Id</u>. (quoting <u>SEC v. Gulf & Western Industries</u>, 518 F. Supp. 675, 682 (D.D.C. 1981)).

Because the attorney-client privilege protects only a client's confidential disclosures to its attorney, the voluntary disclosure of privileged documents to a third party waives the attorney-client privilege.  <u>See In re Grand Jury</u>, 475 F.3d 1299, 1305 (DC Cir. 2007) ("Here the disclosure of the document was more than inadvertent, its disclosure was actually the result of affirmative acts by the attorney and client now asserting the privilege.  We therefore have no difficulty in holding that the privilege, if indeed it ever existed, has been waived.").  Although such a

disclosure occurred here, D&T USA–or more accurately the plaintiff–asserts that the withheld

documents are protected from disclosure by the attorney-client privilege because each is a

"[c]onfidential communication between client and lawyer for purposes of facilitating the

rendition of legal services or legal advice to the client." (Gov. Ex. A.)  Yet D&T USA's very

possession of the documents belies its claim that the documents are *confidential* communications

between Chemtech and its attorneys.  Regardless whether the documents ever were protected by

attorney-client privilege, Chemtech's disclosure of the documents to its accountant, D&T USA,

destroyed any such privilege, and the documents cannot be withheld on attorney-client privilege

grounds.

        We recognize that several courts have held that the attorney-client privilege may protect

exchanges between the client and an accountant when the accountant enables communication

with the attorney by "translating complex accounting concepts. See, e.g., United States v. Kovel,

296 F.2d 918 (2nd Cir. 1961); F.T.C. v. TRW, Inc., 628 F.2d 207, 212 (D.C. Cir. 1980)

(approving Kovel's reasoning).  These holdings are limited, however, to situations

"'when the accountant's role is to clarify communications between attorney and client'–when he,

in other words, acts 'as a translator or interpreter of client communications'." Evergreen Trading

LLC ex rel. Nussdorf, 80 Fed. Cl. 122, 141 (Fed. Cl. 2007) (quoting United States v. Ackert, 169

F.3d 136, 139 (2nd Cir. 1999).  Further, for the privilege to attach, "the communication must be

made 'for the purpose of obtaining legal advice . . . '[i]f what is sought is not legal advice but

only accounting service . . . , or if the advice sought is the accountant's rather than the lawyer's,

no privilege exists." Id. (quoting Kovel, 296 F.2d at 922.)  Other than the boilerplate assertion

contained in the privilege log, there is no factual basis to allow the government–or this Court–to determine the true nature of the withheld communications between Chemtech and D&T USA.

Regardless, because D&T USA was Chemtech's independent auditor, neither the plaintiff's nor the plaintiff's counsel's communications with D&T USA fall are protected by the attorney-client privilege. On the present record, it does not appear that D&T USA was translating accounting concepts to enable an attorney-client communication, nor is it apparent that the withheld documents were given to D&T USA for the purpose of facilitating legal advice. Rather, it appears the documents were provided to D&T USA so that it could independently audit Chemtech's financial statements. This disclosure waived any attorney-client privilege that might have applied to the documents had they remained in the hands of the plaintiff's counsel.

B.    Chemtech waived any work-product protection by disclosing the withheld documents to D&T USA

D&T USA also asserts that the withheld documents are protected from disclosure by the attorney-work-product doctrine. Assuming the withheld documents were protected by the work-product doctrine (and neither Chemtech nor D&T USA has made any showing whatsoever that the documents in question were prepared in anticipation of litigation), any protection they might have enjoyed was waived when Chemtech shared the documents with D&T USA. While mere disclosure of documents to a third party does not waive work-product protection, the disclosure of documents to a "potential adversary" destroys that protection.

Under the work-product doctrine, documents "prepared in anticipation of litigation or for trial" are not discoverable absent a showing of "substantial need" for the materials by the discovering party. Fed. R. Civ. P. 26(b)(3). Unlike the attorney-client privilege, work-product

protection is not designed to protect a confidential relationship, but rather to "promote the adversary system by safeguarding the fruits of an attorney's trial preparation from the discovery attempt of an opponent." In re Subpoenas Duces Tecum, 738 F.2d 1367, 1371 (D.C. Cir. 1984). Work-production protection is "provided against 'adversaries,' so only disclosing material in a way inconsistent with keeping it from an adversary waives work product protection." U.S. v. Massachusetts Institute of Technology, 129 F.3d 681, 687 (1st Cir. 1997). For that reason, a party may not disclose information to one adversary and then later withhold that same information from another adversary under the work-product doctrine. In re Subpoenas Duces Tecum, 738 F.2d at 1371-1372. Moreover, a party's disclosure of information to an audit agency is a disclosure to a potential adversary, and waives work-product protection. Massachusetts Institute of Technology, 129 F.3d at 687. This potential adversarial relationship arises from the fact that an independent auditor does not share a common legal interest with its client. Rather, the auditor's role is to review the party's financial statements for accuracy and compliance with applicable accounting standards; therefore, the potential for dispute or even litigation exists. Id.

As Chemtech's independent auditor, D&T USA has the duty to independently and objectively assess the accuracy of Chemtech's financial statements, and their compliance with generally accepted accounting principles, regardless of the adverse financial impacts its audit may cause to Chemtech, or its so-called partners. Viewed in that context, the potential for a dispute or litigation between D&T USA and Chemtech is apparent. Thus, by disclosing the withheld documents to its accountant, a potential adversary, Chemtech has waived work-product protection over those documents, and those documents may not be withheld on those grounds.

-10-

C.   <u>D&T USA, as Chemtech's independent auditor, did not provide tax advice to Chemtech and may not assert the the tax practitioner's privilege</u>

Finally, D&T USA asserts that one of the withheld documents is protected from disclosure by the tax practitioner's privilege.  Again, however, neither Chemtech nor D&T USA has provided a factual basis for this assertion.  Indeed, no basis exists, because D&T USA was not a tax practitioner working for Chemtech, but, rather, was Chemtech's independent auditor for financial accounting purposes only.  Since D&T USA did not provide tax advice to Chemtech, the tax practitioner's privilege is inapplicable.

The tax practitioner's privilege provides that "[w]ith respect to tax advice, the same common law protections of confidentiality which apply to a communication between a taxpayer and an attorney shall also apply to a communication between a taxpayer and any federally authorized tax practitioner to the extent the communication would be considered a privileged communication if it were between a taxpayer and an attorney." 26 U.S.C. § 7525(a)(1).  Courts address claims of tax practitioner's privilege in the same manner as they would for claims of attorney-client privilege. <u>United States v. KPMG, LLP</u>, 316 F. Supp. 2d. 30, 35 (D.D.C. 2004).

Section 7525 protects only communications related to tax advice.  It "does not protect work product, and nothing in the statute suggests that these nonlawyer practitioners are entitled to privilege when they are doing other than lawyers' work. <u>Id</u>. (citing <u>United States v. Frederick</u>, 182 F.3d 496, 502 (7th Cir. 1999) (internal quotations omitted)).  Thus, the tax practitioner's privilege does not protect communications between a tax practitioner and a client simply to assist in the preparation of a tax return. <u>Id</u>.  Similarly, an independent auditor's communications with a party do not fall within the purview of § 7525.  An independent auditor neither engages in

-11-

"lawyers' work" for its clients, nor provides the clients it is auditing with "tax advice." Therefore, an independent auditor's work for a client is not protected from discovery by § 7525.

## II.    The Zurich documents are within D&T USA's control

D&T USA has refused to produce, or even request, responsive documents that are located at D&T Zurich. Contrary to the representations in D&T USA's June 26, 2008 letter, D&T USA is in no way absolved from its obligation to produce responsive documents merely because the documents are located outside of the United States. The Zurich documents are within the control of D&T USA, and must be produced.

### A.    D&T USA must produce all documents that it has the legal right, authority, or ability to obtain upon demand

In response to a subpoena, a third party must produce all responsive documents in its "possession, custody, or control." Fed. R. Civ. P. 45(a)(1)(A)(iii). The fact that responsive documents are located outside of the United States does not relieve a responding party from this obligation. See Tequila Centinela, S.A. de C.V. v. Bacardi & Co. Ltd., 242 F.R.D. 1, 12 (D.D.C. 2007). Further, the documents requested need not be in the physical possession of the party from whom discovery is sought. See, e.g., Searock v. Stripling, 736 F.2d 650, 653 (11th Cir. 1984). Rather, the determinative factor is whether the documents are within the "control" of the responding party. See, e.g., Tequila Centinela, 242 F.R.D. at 12; Alexander v. FBI, 194 F.R.D. 299, 301 (D.D.C. 2000). The test for "control" is the same whether the documents are requested from a party, pursuant to Fed. R. Civ. P. 34, or a non-party pursuant to Fed. R. Civ. P. 45. See Alcan International Ltd. v. S.A. Day Mfg. Co., Inc., 176 F.R.D. 75, 78 (W.D.N.Y. 1996).

Where discovery is sought from one corporation of documents that are in the physical possession of an affiliated corporation, "control" of documents is defined broadly as "the legal right, authority, or ability to obtain documents upon demand." U.S. International Trade Commission v. ASAT, Inc., 411 F.3d 245, 254 (D.C. Cir. 2005) (citing Camden Iron & Metal, Inc. v. Marubeni America Corp., 138 F.R.D. 438 (D.N.J. 1991); see also Dietrich v. Bauer, 2000 WL 1171132, *3 (S.D.N.Y. 2000); Bank of New York v. Meridien Biao Bank Tanzania, 171 F.R.D. 135, 146 (S.D.N.Y. 1997). When analyzing whether a corporation has the "legal right, authority, or ability to obtain documents upon demand" from an affiliated corporation, "the specific form of the corporate relationship does not determine whether or not 'control' exists." Dietrich, 2000 WL 1171132, *3 n. 3 (citing Securities and Exch. Comm'n v. Credit Bancorp, Ltd., No. 99 Civ. 11394.) Instead, a court must "consider the nature of the relationship between the corporation and its affiliate." Hunter Douglas, Inc. v. Comfortex Corp., 1999 WL 14007, *3 (S.D.N.Y.).

In U.S. International Trade Commission, supra, the court determined control existed where "(1) the alter ego doctrine...warranted 'piercing the corporate veil; (2) the subsidiary was an agent of the parent in the transaction giving rise to the lawsuit; (3) [t]he relationship is such that the agent-subsidiary can secure documents of the principal-parent to meet its own business needs and documents helpful for use in litigation; (4) [t]here is access to documents when the need arises in the ordinary course of business; and (5) [the] subsidiary was [a] marketer and servicer of the parent's product [] in the United States." 411 F.3d at 255.

Similarly, other courts have considered whether documents "flow freely" between the two entities and"the affiliate can obtain documents from its foreign parent to assist itself in

-13-

litigation," Hunter Douglas, 1999 WL 14007, *3; whether "the two entities operated as one," or there was "demonstrated access to documents in the ordinary course of business" by the subpoenaed entity, Ssangyong, Corp. v. Vida Shoes Intern., Inc., 2004 WL 1125659, *4 (citing Dietrich, 2000 WL 1171132, *4).

The "control" of documents has also been construed as "the legal right to obtain such documents on demand." See, e.g., Tequila Centinela, 242 F.R.D. at 12 (citing Alexander,194 F.R.D. at 304). But, this definition rarely has been applied to documents in the possession of a corporation affiliated with the corporation upon whom the request is made. Instead, it has been applied where documents are in the possession of a third party unaffiliated with the subpoenaed entity. See Cochran Consulting, Inc. v. Uwatec USA, Inc., 102 F.3d 1224 (Fed. Cir. 1996) (applying "legal right" test where the requested information was held by an unaffiliated third party and the subpoenaed entity even brought suit against that third party to attempt to obtain that information); In re Bankers Trust Co., 61 F.3d 465 (6th Cir. 1995) (applying "legal right" test where the subpoenaed party itself had actual possession of the documents in question, but sought to avoid disclosing them); Chaveriat v. Williams, 11 F.3d 1420 (7th Cir. 1993) (applying "legal right" test where the subpoenaed documents were in the possession of a third party connected only through a contractual business relationship with the subpoenaed entity); Gerling Int'l Ins. Co. v. Commissioner, 839 F.2d 131 (3rd Cir. 1988) (same); Searock v. Stripling, 736 F.2d 650 (11th Cir. 1984) (same).

Although these cases applied the "legal right" test, research has found only one circuit–the Ninth Circuit–that applied the test in the context of documents held by the subpoenaed party's affiliate. And in the two cases where it has done so, the court's holding was

-14-

based more on the facts of the case before it than a strict application of the "legal right" definition.

In <u>United States v. International Union of Petroleum & Indus. Works</u>, the court rejected the United States's argument that an international union controlled the documents of its local members. 870 F.2d 1450, 1452 (9th Cir. 1989). Applying the "legal right" definition of control, the court concluded that the international union and its local members were separate organizations under the National Labor Relations Act and the Labor-Management Reporting and Disclosure Act and that the union's constitution did not give the international union control over its local members or the right to demand documents from them. <u>Id</u>. at 1452-53. However, the court also found that the international union did not have the practical ability to obtain the subpoenaed documents. <u>Id</u>. at 1453-54. The court recognized that the international and the local members are "frequently in adversarial positions," and "often engage in lawsuits, internal protests, and complaint proceedings against one another. <u>Id</u>. at 1454. Thus, the court concluded, "that there is a vast array of issues of contention between them and their locals suggests that the concept of an 'inherent relationship' is an illusory one, and we decline to recognize it today." <u>Id</u>. This does not appear to be the case here, where D&T USA and D&T Zurich enjoyed a close working relationship that focused on a unified objective. The Ninth Circuit also noted that the United States simply could have subpoenaed the local members themselves, a remedy that is not available to the United States in this case.

Similarly, in <u>In re Citric Acid Litigation</u>, the Ninth Circuit applied the "legal right" definition of control but recognized that the subpoenaed party did not have the ability to obtain the documents in question. 191 F.3d 1090 (9th Cir. 1999). In <u>Citric Acid</u>, the plaintiff

-15-

subpoenaed an accounting firm for documents from its Swiss affiliate. Id. at 1107. The accounting firm attempted to obtain the requested documents from its foreign affiliate, but the foreign affiliate refused to produce them. Id. Thereafter, the plaintiff moved to compel their production. Id. Relying on International Union, the court rejected the "practical ability" definition of control. Id. However, the court noted that an order compelling the accounting firm to produce them would have been futile because it had already requested the documents but could not force its foreign affiliate to provide them. Id. There is no evidence to suggest that is the case here.

On the contrary, the relationship between D&T USA and D&T Zurich–as evidenced by the joint nature of the Chemtech engagement (discussed in more detail below)–suggests that D&T USA should be able to obtain the requested documents from its Swiss affiliate. Thus, under the circumstances of this case, a more practical test for control over the Zurich documents seems appropriate. See Dietrich v. Bauer, 198 F.R.D. 397 (S.D.N.Y. 2001); Hunter Douglas,1999 WL 14007, *3 ("The test to determine whether a corporation has custody and control over documents located with an overseas affiliate is not limited to whether the corporation has a legal right to those documents. Rather, the test focuses on whether the corporation has access to the documents and ability to obtain the documents.") Applying this standard to the case at hand demonstrates that the Zurich documents are in D&T USA's control, and should be produced in the response to the United States' subpoena.

B.    D&T USA's close working relationship with D&T Zurich

Although D&T USA does not have physical possession of the Zurich documents, its working relationship with D&T Zurich demonstrates that it has the ability to obtain those

-16-

documents upon request. As the documents produced by D&T USA to the United States show, D&T USA and D&T Zurich worked as one entity on the Chemtech audit.

From the outset, the Chemtech audit was a joint undertaking by D&T USA and D&T Zurich. D&T Zurich was first contacted about the audit not by Chemtech (or Dow), but by D&T USA. In a November 5, 1993 memorandum to D&T Zurich, D&T USA (through its Midland, Michigan office) explained that it had "been advised by Dow management that Chemtech will have a separate audit requirement for which D&T Zurich will be engaged" and instructed D&T Zurich to discuss this with Chemtech's European management. (Gov. Ex. 9.)

Thereafter, and as set forth in that memorandum, D&T USA and D&T Zurich coordinated with each other regarding discussions with Dow and Chemtech, the fees for the joint engagement, and the parameters of the audit. (Id.) In the memorandum, D&T USA explained that it would perform a specific aspect of the audit–auditing royalty payments due from Dow to Chemtech–and that it would coordinate the timing of that work with D&T Zurich. (Id.) It further indicated that it would provide D&T Zurich with a fee estimate for D&T Zurich's "use in discussing an overall fee estimate" with Chemtech. (Id.) Through later correspondence, the offices clarified the tasks that D&T USA would perform as part of the audit and agreed upon a joint fee estimate (for which D&T Zurich sought, and received, D&T USA's approval) (Gov. Ex. 10-13.)

In the years that followed, D&T USA and D&T Zurich continued to act as one entity, in both their relationship with each other, and with Dow and Chemtech. D&T Zurich relied on D&T USA to get information from Dow regarding the type of audit they were to conduct. (Gov.

Ex. 14 & 15.) D&T USA and D&T Zurich continued to coordinate the timing of their work. (Gov. Ex. 16 & 17.)

Moreover, D&T USA and D&T Zurich worked together closely on the actual audit work, and information flowed freely between the two offices until at least the end of 1997. D&T Zurich sent draft US GAAP financial statements to D&T USA for review, and sought specific information for those statements from D&T USA. (Gov. Ex. 18.) In return, D&T USA provided information to D&T Zurich upon request. (Gov. Ex. 19 & 20.) The auditing work performed by D&T USA was not limited to US GAAP financial statements, as D&T USA was also involved in auditing appraisals of patents distributed by Chemtech. (Gov. Ex. 21-23.) As evidenced by a December 20, 1995 email from D&T USA to D&T Zurich, their work for Chemtech was not that of separate entities coordinating their efforts. In that email, an employee of D&T USA, upon learning that D&T Zurich issued financial statements before receiving input from D&T USA, chastised D&T Zurich by stating:

> These financial statements have a high visibility at Dow in Midland. This is why I specifically requested they be submitted for my review prior to issuance. . . . I recognize the need to meet client deadlines, but I place a much higher priority on making sure we are not embarrassed by issuing incorrect statements.

(Gov. Ex. 24.) D&T USA has not argued that it is unable to obtain the Zurich documents. Rather, it simply has not attempted to do so. In this regard, Deloitte seeks to hide behind the separate legal status of D&T USA and D&T Zurich and ignore the joint effort of their audit engagement with Dow and Chemtech. As the working relationship between D&T USA and D&T Zurich demonstrates, however, D&T USA has the ability to obtain the Zurich documents upon request. Accordingly, D&T must produce the documents.

## **CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court compel

Deloitte & Touche USA LLP to produce the three documents it has withheld from the United

States on privilege grounds and all documents responsive to the United States' subpoena

maintained at its Zurich, Switzerland affiliate.


Respectfully submitted,

UNITED STATES OF AMERICA, by

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY


Thomas F. Koelbl
Deborah M. Morris
Robert L. Welsh
Trial Attorneys, Tax Division
U.S. Department of Justice
Post Office Box 14198
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 514-5891
            (202) 353-1758
            (202) 514-6068
Fax: (202) 514-9868

-19-

## FED. R. CIV. P. 37(a)(1) CERTIFICATION

In accordance with Fed. R. Civ. P. 37(a)(1) and Local Rule 7(m), I certify that I have

conferred in good faith with counsel for Deloitte & Touche USA LLP in an attempt to resolve

this discovery dispute without court action.

Dated this 30th day of June, 2008.


Thomas F. Koelbl
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 14198
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 514-5891
Fax: (202) 514-9868

-20-

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing United States' Motion to Compel Deloitte & Touche

USA LLP to Produce Documents was sent to the parties below by United States mail, postage

prepaid, addressed to:

Eric P. Witiw
Deloitte & Touche USA LLP
Suite 500
555 12th St. NW
Washington, DC 20004

John B. Magee, Esq.
McKee Nelson LLP
1919 M Street, NW, Suite 800
Washington, DC 20036

Dated this 30th day of June, 2008.

Thomas F. Koelbl
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 14198
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 514-5891
Fax: (202) 514-9868

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA
MISC. #

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| | ) | Civil Action No. 05-944-RET-DLD (M.D. LA) |
| v. | ) | |
| | ) | CONSOLIDATED WITH |
| DELOITTE & TOUCHE USA LLP, | ) | |
| | ) | Civil Action No. 07-405-RET-DLD; and |
| | ) | Civil Action No. 06-258-RET-DLD |
| | ) | |
| Respondant. | ) | |
| _____ | ) | |

## DECLARATION OF THOMAS F. KOELBL

I, Thomas F. Koelbl, pursuant to 28 U.S.C. § 1746, declare as follows:

1.    I am a Trial Attorney for the U.S. Department of Justice, Tax Division, and lead

counsel for the United States of America in the above-captioned proceeding.  I have prepared this

declaration in support of the United States' Motion to Compel Deloitte & Touche USA LLP to

Produce Documents.

2.    On September 20, 2007, the United States served a subpoena on Deloitte &

Touche USA LLP ("D&T USA.   A true and correct copy of that subpoena is attached to the

United States' motion to compel as Exhibit 1.

3.    On or about September 28, 2007, the United States received a letter from D&T

USA in response to the above-referenced subpoena.  A true and correct copy of that letter is

attached to the United States' motion to compel as Exhibit 2.

-1-

4.      On or about December 21, 2007, the United States received a second letter from D&T USA in response to the above-referenced subpoena. A true and correct copy of that letter is attached to the United States' motion to compel as Exhibit 3.

5.      On February 8, 2008, the United States received a letter dated January 11, 2008 from D&T USA in response to the above-referenced subpoena. A true and correct copy of that letter is attached to the United States' motion to compel as Exhibit 4.

6.      On April 29, 2008, the United States served a request for the production of documents on the plaintiff in the above-referenced litigation. A true and correct copy of that request is attached to the United States' motion to compel as Exhibit 5.

7.      On or about June 6, 2008, the plaintiff responded to the United States' request for the production of documents. A true and correct copy of that response is attached to the United States' motion to compel as Exhibit 6.

8.      On June 20, 2008, the United States sent a letter to D&T USA in an attempt to resolve the impasse related to the above-referenced subpoena. A true and correct copy of that letter is attached to the United States' motion to compel as Exhibit 7.

9.      On June 26, 2008, D&T USA sent a letter to the United States in response to the United States' June 20, 2008 letter. A true and correct copy of that letter is attached to the United States' motion to compel as Exhibit 8.

10.     On or about December 21, 2007, the United States received certain documents from D&T USA in response to its subpoena. Counsel for D&T USA represented to counsel for the United States that none of these documents were provided by a foreign affiliate of D&T USA. I further understand that D&T USA made no request for responsive documents to any of

its foreign affiliates.  The documents attached as Exhibits 9-24 to the United States' motion to

compel are true and correct copies of documents received from D&T USA in that response.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Washington, D.C., this 30th day of June 2008.

THOMAS F. KOELBL

A 88 (Rev. 11/91) Subpoena in a Civil Case

# United States District Court

DISTRICT OF _____ Columbia _____

Chemtech Royalty Associates, L.P.,
by Dow Europe, S.A., as Tax Matters Partner

**SUBPOENA IN A CIVIL CASE**

### PLAINTIFF

v.

United States of America

CASE NUMBERS: **05-944-RET-DLD, 06-258-RET-DLD, and 07-405-RET-DLD (M.D. La.)**

### DEFENDANT

TO:   Deloitte & Touche USA, LLP.

555 12th St. N.W., Suite 500
Washington, District Of Columbia 20004-1207

☐ **YOU ARE COMMANDED** to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☒ **YOU ARE COMMANDED** to appear at the place, date, and time specified below at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Tax Division, Department of Justice, 555 4th Street, NW, Suite 6235 Washington, D.C. 20001 | Friday, November 9, 2007 at 9:30 a.m. |

☒ **YOU ARE COMMANDED** to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
SEE ATTACHMENT

| PLACE | DATE AND TIME |
|---|---|
| **By Federal Express (or in person) to:** Brian R. Harris, Tax Division, Department of Justice, 555 4th Street, NW, Suite 6235, Washington, D.C. 20001 | Friday, October 5, 2007 at 9:30 a.m. |

☐ **YOU ARE COMMANDED** to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *[signature]*  (Attorney for Defendant) | September 20, 2007 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER Brian R. Harris, Trial Attorney, Tax Division, Department of Justice,
P. O. Box 14198, Ben Franklin Station, Washington, D.C.  20044 -- Telephone:  (202) 514-6483

(See Rule 45, Federal Rules of Civil Procedure:  Parts C & D on Reverse)

**GOVERNMENT
EXHIBIT
1**

A 88 (Rev. 11/91) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| | | |
|---|---|---|
| SERVED ON (PRINT NAME) | | MANNER OF SERVICE |

| | | |
|---|---|---|
| SERVED BY (PRINT NAME) | | TITLE |

---

## DECLARATION OF SERVICE

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) require a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transactions business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden

(B) if a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## DELOITTE SUBPOENA ATTACHMENT

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, the United States requests that Deloitte produce the documents described more fully below.

### Definitions and Instructions

A.     The term "Deloitte" refers to Deloitte Touche Tohmatsu, S.V., its member firms and their respective subsidiaries and affiliates, and includes partners, principals, employees and any other representative.

B.     The term "Dow" refers to The Dow Chemical Company, its subsidiaries, agents, employees, representatives, and/or attorneys.

C.     The term "Chemtech" refers to Chemtech Royalty Associates, L.P. and Chemtech II, L.P., its subsidiaries, related entities, agents, employees, representatives, and/or attorneys.

D.     The term "Chemtech Portfolio" refers to Chemtech Portfolio, Inc., and Chemtech Portfolio II, Inc., its subsidiaries, related entities, agents, employees, representatives, and/or attorneys.

E.     The terms "document" and "writing" are to be liberally construed to include all originals, copies, and non-identical copies (whether by reason of handwritten notations thereon or otherwise), of written and documentary materials, as well as recordings and sound reproductions, including but not limited to correspondence, letters, notes, telecopies, facsimiles, correspondence, agreements, drafts, memoranda, contracts, term sheets, engagement letters, proposals, presentations, promotional materials, offering memoranda, prospectuses, presentations, reports, books, records, journals, ledgers, minutes, telecopier logs or transmission receipts, financial statements, telephone message slips, telephone invoices, computer print-outs, electronic mail messages, worksheets, drawings, specifications, and invoices. "Document" and "writing" shall also include any electronically stored information including but not limited to any file, document, data, electronic mail messages, words or information, in draft or final form, on a computer disk or similar storage device or hard drive or in the memory of a computer network or mainframe or on a file server. Any such document is to be printed and produced on paper, as hard copy, as well as provided in the electronic format in which it is stored.

F.     The term "person" includes a corporation, partnership, or other business association or entity, and unincorporated association, a natural person, or any government or governmental body, commission, board or agency.

G.     The terms "communication" and "correspondence" mean any oral or written utterance, notation or statement of any nature whatsoever, by and to whomsoever.

-1-

H.      Unless otherwise noted, the relevant time period is January 1, 1993 through December 31, 2003 and the period during which Deloitte was performing work for Dow, Chemtech, and/or Chemtech Portfolio for the tax years 1993 through 2003.

Claims of Privilege.  If Deloitte declines to produce any document in response to any of the requests set forth below, please provide a privilege log.

## DOCUMENTS REQUESTED

1.     All communications with Dow (in connection with Chemtech),  Chemtech, and/or Chemtech Portfolio, including but not limited to management letters, engagement letters, retention letters, and other correspondence.  This includes, but is not limited to, communications between Deloitte and the Board of Directors, audit committee, member committee, finance committee and/or  any other committees of Dow (in connection with Chemtech), Chemtech, and/or Chemtech Portfolio.

2.     All documents identifying or referring to all Deloitte employees, partners, agents, affiliates, contractors, counsel, advisors or experts, who provided any service to Dow (in connection with Chemtech), Chemtech, and Chemtech Portfolio.

3.     All audit planning materials concerning any audit or review of Dow (in connection with Chemtech), Chemtech, and/or Chemtech Portfolio, including but not limited to audit planning memos, descriptions of the limited partnership arrangement, which may include written memoranda, flowcharts, e-mails, notes, facsimiles or any other documents which portray the nature of the arrangement.

4.     All documents relating to any audit, reviews, workpapers and permanent files, financial statements items, SEC filings and public disclosures during the relevant time period, including all documents relating to all financial statements prepared on a GAAP basis or a Partnership basis (or any other basis that might have been used) with respect to Dow (in connection with Chemtech), Chemtech, and Chemtech Portfolio.

5.     All documents concerning the policies, practices or procedures relating to all formal or informal accounting standards in connection with the limited partnership arrangement and all documents concerning any deviation from the established policies, practices or procedures for the Dow (in connection with Chemtech), Chemtech, and Chemtech Portfolio.

6.     All documents concerning any formal or informal internal control policies, practices or procedures in connection with the limited partnership arrangement and all documents concerning any deviation from the established internal control policies, practices and procedures for the Dow (in connection with Chemtech), Chemtech, and Chemtech Portfolio.

7.  All documents concerning any revenue recognition policies and procedures of Chemtech, including but not limited to any analyses of Chemtech's royalty income during the relevant time period.

8.  All communications between Deloitte and any national securities exchange, including the SEC, with respect to Dow (in connection with Chemtech), Chemtech, and Chemtech Portfolio.

9.  All documents exchanged between Deloitte and any national securities exchange, including the SEC, with respect to Dow (in connection with Chemtech), Chemtech, and Chemtech Portfolio.

10. All documents, memoranda and communications concerning compliance with GAAP for Dow (in connection with Chemtech), Chemtech, and Chemtech Portfolio.

11. All documents concerning any adjustments, changes or revisions to the financial results, on a quarterly and annual basis for the Dow (in connection with Chemtech), Chemtech, and Chemtech Portfolio.

12. All documents concerning any audit, review, analysis or report concerning compliance with (i) its own internal policies and practice, (ii) state and federal laws for the Dow (in connection with Chemtech), Chemtech, and Chemtech Portfolio.

13. All documents concerning the accuracy, adequacy, or completeness of the disclosures contained in the financial statements of Dow (in connection with Chemtech), Chemtech, and Chemtech Portfolio.

14. All documents sufficient to identify all reports generated for internal and external financial reporting purposes for Dow (in connection with Chemtech), Chemtech, and Chemtech Portfolio.

15. All documents concerning the financial effects to Dow related to its participation in Chemtech, including all documents created and/or used in preparing its financial statements, including but not limited to the following:

    a.  Chart of general ledger accounts with a description for the use of each account for Chemtech and Chemtech Portfolio;

    b.  All books and records reflecting the establishment and subsequent activity in the minority interest account on the books of Dow with respect the outside investors' limited partner interests between 1993 and 2003;

    c.      All books and records of Dow reflecting the accounting for the assets, liabilities, results of operations and cash flows of Chemtech and Chemtech Portfolio between 1993 and 2003;

    d.      Internal financial statements of Chemtech and Chemtech Portfolio, including top-sided journal entries, general journal and adjusting entry summaries for all quarterly and year-end periods between 1993 and 2003; and

    e.      Year-end trial balances and general ledgers for Chemtech and Chemtech Portfolio between 1993 and 2003.

16.     All other documents not otherwise requested in requests above, concerning any professional services performed for Dow (in connection with Chemtech), Chemtech, and Chemtech Portfolio, including but not limited to: (i) auditing and (ii) consulting.

17.     All documents relating to Dow (in connection with Chemtech), Chemtech, and Chemtech Portfolio, including, without limitation, correspondence files and written communications electronically preserved including but not limited to e-mail and instant messages.

18.     All documents related to or referring to Chemtech or Chemtech Portfolio.

19.     All documents provided to you by Dow (or any other entity) related to an audit, exam or other review of Dow (in connection with Chemtech), Chemtech, and Chemtech Portfolio.

20.     All documents concerning your document destruction, retention and alteration policy from 1993 - present.

-4-

# Deloitte.

Deloitte & Touche USA LLP
1633 Broadway
New York, NY 10019-6754
USA

Tel: +1 212 492 4000
Fax: +1 212 492 4201
www.deloitte.com

September 28, 2007

<u>Via Facsimile and US Mail</u>
Brian R. Harris, Trial Attorney
U.S. Department of Justice, Tax Division
Civil Trial Section, Southern Region
P.O. Box 14198, Ben Franklin Station
Washington, D.C. 20044

Re:   *Chemtech Royalty Associates, LP v. USA*
      *Case No. 05-944 (M.D. La.)*
      Subpoena addressed to Deloitte & Touche USA, LLP

Dear Mr. Harris:

I write regarding the subpoena addressed to Deloitte & Touche USA, LLP ("Deloitte & Touche USA") in the above referenced matter. I unsuccessfully attempted to reach you by telephone to discuss this matter. While Deloitte & Touche USA, Deloitte & Touche LLP, Deloitte Tax LLP, Deloitte Consulting LLP and Deloitte Financial Advisory Services LLP (collectively "Deloitte US Firms") are prepared to discuss the scope of the subpoena and other concerns with you, the Deloitte US Firms are objecting pursuant to Federal Rule of Civil Procedure 45 in order to preserve their rights pending such discussions. The Deloitte US Firms' objections to the subpoena are as follows:

1.     The Deloitte US Firms object to the subpoena to the extent that it purports to require the production of documents which are protected by the accountant-client privilege, the attorney-client privilege, the work product doctrine, the privilege of self-critical analysis or any other applicable privilege, rule, or duty of confidentiality which precludes or limits production or disclosure of information therein;

2.     The Deloitte US Firms object to the subpoena to the extent that it seeks the production of tax returns or tax return preparation materials, including workpapers and correspondence, which the Deloitte US Firms are precluded from disclosing under Section 7216 of title 26 of the United States Code or any other information which the Deloitte US Firms are precluded from disclosing under other applicable statutes or regulations;

3.     The Deloitte US Firms, non-parties to this action, object to the subpoena to the extent that it calls for the production of documents



GOVERNMENT
EXHIBIT
2

Member of
Deloitte Touche Tohmatsu

which constitute proprietary information, trade secrets and/or other confidential, research, development or commercial information of the Deloitte US Firms. Such documents have been developed at great expense to and effort by the Deloitte US Firms and their disclosure would be competitively harmful to the Deloitte US Firms. No confidentiality stipulation provides adequate protection for their production. Further, such documents are neither relevant to the subject matter of the pending action nor reasonably calculated to lead to the discovery of admissible evidence;

4.      The Deloitte US Firms object to the subpoena to the extent that it purports to require the preservation, review and production of documents and data from legacy data sources, including data sources maintained for disaster-recovery related purposes only, obsolete data, data preserved for matters unrelated to this Request and other non-active data, including data on historic back-up tapes, hard drives and other media in the possession of the Deloitte US Firms which are no longer in use. Generally, such data is not reasonably accessible and likely is duplicative of data available from other active and readily accessible sources. Because of the lack of relevance of such legacy data and the cost associated with searching, preserving and accessing the legacy data sources, the Deloitte US Firms, non-parties to this matter, will not preserve and search legacy data sources in response to this Request;

5.      The Deloitte US Firms object to the scope of the subpoena as overbroad, unduly burdensome and oppressive, and not reasonably calculated to lead to the discovery of admissible evidence to the extent that it purports to require the Deloitte US Firms to search not only their own offices for relevant documents, but also the offices of other entities, including other members of Deloitte Touche Tohmatsu;

6.      The subpoena was not served sufficiently in advance of its return date so as to allow the Deloitte US Firms adequate time to respond.

In making the above objections, the Deloitte US Firms are not suggesting or implying in any way that they have documents responsive to a particular Request.

The Deloitte US Firms would like to resolve their objections without burdening the court with motion practice. We would appreciate an opportunity to discuss the subpoena, the document requests and the objections with you. I can be reached at (202)879-5662.

Thank you for your anticipated cooperation.

Sincerely,

Eric Wilw
Assistant General Counsel

Cc: John Magee

# Deloitte.

Deloitte & Touche USA LLP
Suite 500
555 12th Street N.W.
Washington, DC 20004-1207
USA

Tel: +1 202 879 5600
Fax: +1 202 879 5353
www.deloitte.com

December 21, 2007

<u>Via Hand Delivery</u>
Brian R. Harris, Trial Attorney
U.S. Department of Justice, Tax Division
555 4th Street, NW
Suite 6235
Washington, D.C.  20001

Re:    *Chemtech Royalty Associates, LP v. USA*
       *Case No. 05-944 (M.D. La.)*
       Subpoena addressed to Deloitte & Touche USA, LLP

Dear Mr. Harris:

Pursuant to the above referenced subpoena, enclosed are materials numbered DT 1 through DT 2910 that we believe are responsive to the subpoena.

We have been informed by plaintiff's counsel that other materials are subject to a claim of privilege being asserted by the plaintiff. Consequently, those materials have not been produced. I understand that plaintiff's counsel will prepare and produce a privileged log identifying that material.

You can reach me at (202)879-5662 if you have any questions or wish to discuss this matter further.

Very truly yours,

Eric P. Witiw
Assistant General Counsel

Cc: Phil MacWilliams

GOVERNMENT
EXHIBIT
_3_

Member of
Deloitte Touche Tohmatsu

# Deloitte.

Deloitte & Touche USA LLP
Suite 500
555 12th Street N.W.
Washington, DC 20004-1207
USA

Tel: +1 202 879 5600
Fax: +1 202 879 5353
www.deloitte.com

January 11, 2008

Brian R. Harris, Trial Attorney
U.S. Department of Justice, Tax Division
555 4th Street, NW
Suite 6235
Washington, D.C.  20001

Re:    *Chemtech Royalty Associates, LP v. USA*
       *Case No. 05-944 (M.D. La.)*
       Subpoena addressed to Deloitte & Touche USA, LLP

Dear Mr. Harris:

Pursuant to our December 21, 2007 letter concerning the above referenced matter, attached is a privileged log prepared by counsel for the plaintiff relating to the information that was not produced and the bases therefore.

You can reach me at (202)879-5662 if you have any questions or wish to discuss this matter further.

Very truly yours,

Eric P. Witiw
Assistant General Counsel

Cc: Phil MacWilliams

GOVERNMENT
EXHIBIT
4

Member of
Deloitte Touche Tohmatsu

Chemtech Royalty Associates, L.P. by Dow Europe S.A. v. United States
Civil Actions Nos. 05-944-C-M3 and 06-258-RET-CN
and
Chemtech II, L.P. by Ifco, Inc. v. United States
Civil Action No. 07-CV-00405-RET-DLD

Privilege Log Related to September 20, 2007 Subpoena to Deloitte & Touche

| Date | Author | Addressee | Document Type | Privilege Type | Privilege Basis | Subject Matter |
|------|--------|-----------|---------------|----------------|-----------------|----------------|
| 6/20/2005 | McKee Nelson LLP | William L. Curry | Tax Opinion | Attorney-Client Privilege and Attorney Work Product | Confidential communication between client and lawyer for purposes of facilitating the rendition of legal services or legal advice to the client; Document prepared in anticipation of litigation | Tax issues related to the Chemtech partnership |
| 9/15/1998 | Michael Cone and Craig Jones | File | Memorandum and Flow Chart | Attorney-Client Privilege; Attorney Work Product; and 7525 Tax Practitioner's Privilege | Confidential communication reflecting client-supplied information between client's lawyers, or from client's lawyers to file, for purposes of facilitating the rendition of legal services or legal | Tax issues related to the Chemtech partnership |

1

| Date | Author | Addressee | Document Type | Privilege Type | Privilege Basis | Subject Matter |
|------|--------|-----------|---------------|----------------|-----------------|----------------|
| | | | | | advice to the client; Confidential communication between client and federally authorized tax practitioner, or between federally authorized tax practitioners, for purposes of facilitating the rendition of tax advice to the client; Document prepared in anticipation of litigation | |
| 7/21/1993 | Robert V. Valdez | File | Draft Memorandum | Attorney-Client Privilege and Attorney Work Product | Confidential communication between client and lawyer for purposes of facilitating the rendition of legal services or legal advice to the client; Document prepared in anticipation of litigation | Tax issues related to the Chemtech partnership |

2

IN THE UNITED STATES DISTRICT COURT FOR THE

MIDDLE DISTRICT OF LOUISIANA

CHEMTECH ROYALTY ASSOCIATES, )
L.P., by DOW EUROPE, S.A. as Tax )
Matters Partner, )
                    )
       Plaintiff, )
                    )     Civil Action No. 05-944-C-M3
                    )
       v. )     CONSOLIDATED WITH
                    )
UNITED STATES OF AMERICA, )     Civil Action No. 06-258-RET-CN
                    )
       Defendant. )
                    )

## UNITED STATES' THIRD REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to Fed. R. Civ. P. 6, 26, and 34, the United States requests the plaintiff respond to this third request for production of documents within thirty (30) days of service of this request. In lieu of producing the originals of such responsive documents at the office of the United States Attorney for the Middle District of Louisiana, copies of such documents may be delivered to Robert L. Welsh at his office address, 555 4th Street, N.W., Room 6237, Washington, D.C. 20001.

Scope. The plaintiff is respectfully reminded that a party must include in its response to a production request any document that is within the party's custody or control or reasonably available to the party, the party's attorney, or any other source from whom it may reasonably be secured.



GOVERNMENT
EXHIBIT
5

Definitions and Instructions.

A.   The term "Dow" refers to The Dow Chemical Company, its subsidiaries, related entities, agents, employees, representatives, and/or attorneys.

B.   The term "Chemtech" refers to Chemtech Royalty Associates, L.P. and Chemtech II, L.P., its subsidiaries, related entities, agents, employees, representatives, and/or attorneys. It includes, but is not limited to, Dow Europe, S.A., in circumstances where that entity was acting on behalf of the partnership.

C.   The term "Chemtech Portfolio" refers to Chemtech Portfolio, Inc., its subsidiaries, related entities, agents, employees, representatives, and/or attorneys.

D.   The term "Deloitte" refers to Deloitte Touche Tohmatsu, S.V., its member firms and their respective subsidiaries and affiliates, including those in Switzerland, and includes partners, principals, employees and any other representative.

E.   If any requested document was, but no longer is, in your possession or subject to your control, state what disposition was made of it and the reason for such disposition.

F.   The singular form of a word shall be deemed to include the plural form, and the plural form of a word shall be deemed to include the singular form. Similarly, the masculine form of a word shall be deemed to include the feminine form, and the feminine form of a word shall be deemed to include the masculine form.

G.   Unless otherwise indicated, the time frame applicable to each document request is January 1, 1992, through the present. The term "applicable time period" refers to that period.

H.  To the extent you have already produced documents that are responsive to any document request, it is not necessary to produce those documents again.  Please identify the documents responsive to each request.

I.  To the extent documents are produced in an electronic form, such documents should be produced in "TIFF" format (either multi-page or single page with a cross-reference file).

## REQUESTS FOR PRODUCTION

1.    All general audit work papers prepared on both GAAP and partnership bases and all

correspondence prepared by Deloitte relating to Chemtech, Chemtech II, and Chemtech

Portfolio.


UNITED STATES OF AMERICA, by

DAVID R. DUGAS
UNITED STATES ATTORNEY

John J. Gaupp
Assistant United States Attorney
777 Florida Street, Suite 208
Baton Rouge, Louisiana 70801
Telephone: (225) 389-0443
Fax: (225) 389-0685
Local Counsel

Deborah M. Morris
Robert L.Welsh
Brian R. Harris
Thomas F. Koelbl
Trial Attorneys, Tax Division
U.S. Department of Justice
Post Office Box 14198
Ben Franklin Station
Washington, D.C.  20044
Telephone: (202) 353-1758
Fax: (202) 514-9868

IN THE UNITED STATES DISTRICT COURT FOR THE

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CHEMTECH ROYALTY ASSOCIATES, L.P., by DOW EUROPE, S.A. as Tax Matters Partner, | ) ) ) ) | |
| Plaintiff, | ) ) ) | Civil Action No. 05-944-C-M3 |
| v. | ) ) ) | CONSOLIDATED WITH |
| UNITED STATES OF AMERICA, | ) ) ) | Civil Action No. 06-258-RET-CN |
| Defendant. | ) | |

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that service of the foregoing United States' Third Request

for Production of Documents was made on April 29, 2008, by First Class Mail, postage prepaid,

to:

David M. Bienvenu, Jr., Esq.
Taylor, Porter, Brooks & Phillips
451 Florida Street, 8th Floor
Baton Rouge, LA 70801

John B. Magee, Esq.
McKee Nelson LLP
1919 M Street, NW, Suite 200
Washington, D.C. 20036
(also served via hand delivery)

Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 14198
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 353-1758
Fax: (202) 514-9868

-5-

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

|  |  |
|---|---|
| CHEMTECH ROYALTY ASSOCIATES, L.P., ) by DOW EUROPE, S.A., as Tax Matters Partner ) ) Plaintiff, ) ) v. ) ) UNITED STATES OF AMERICA, ) ) Defendant. ) ) ) | Case No.: 05-944-RET-DLD Case No.: 06-258-RET-DLD Case No.: 07-405-RET-DLD |

## PLAINTIFF'S SUPPLEMENTAL RESPONSES TO UNITED STATES' THIRD REQUEST FOR PRODUCTION OF DOCUMENTS

Plaintiffs, CHEMTECH ROYALTY ASSOCIATES, L.P. ("Chemtech I"), by

DOW EUROPE, S.A., as Tax Matters Partner, and CHEMTECH II, L.P. ("Chemtech II")

(collectively, Chemtech I and Chemtech II shall be referred to as the "Chemtech

partnership" or "Plaintiff"), by IFCO, INC., as Tax Matters Partner, by and through its

attorneys, pursuant to Federal Rule of Civil Procedure 34, hereby supplement their

responses to the United States' Third Request for Production of Documents as follows.

## General Objections

A.    Plaintiff objects to the requests to the extent that they seek information

that is protected from disclosure under the attorney-client privilege, the attorney work

product doctrine, or any other applicable privileges.

GOVERNMENT EXHIBIT 6

B.    Plaintiff objects to the requests as overbroad and unduly burdensome to the extent that they seek information pertaining to time periods after the 2003 taxable year of Chemtech II.  Plaintiff has applied a date cut-off of December 31, 2003 with respect to all of its responses.

C.    Plaintiff objects to the requests as overbroad, unduly burdensome, and beyond the scope of permissible discovery under Federal Rule of Civil Procedure 26(b)(1) to the extent that they seek information that is not relevant to the claim or defense of any party in this case and that is not relevant to the subject involved in this action.

D.    Plaintiff objects to the requests to the extent that they seek information that is otherwise beyond the scope of discovery under the Federal Rules of Civil Procedure.

## Responses

### Request No. 1

All general audit workpapers prepared on both GAAP and partnership bases and all correspondence prepared by Deloitte relating to Chemtech, Chemtech II, and Chemtech Portfolio.

**Response:**

See General Objections.  Without waiving the foregoing objections, Plaintiff responds as follows:

Defendant clarified the scope of the government's request by e-mail dated April 29, 2008:  "We are sending this to you because Deloitte is not willing to provide the documents from their Swiss affiliate."  Plaintiff previously produced all responsive

2

Deloitte documents that it has located in its possession.  Additionally, Deloitte's U.S. affiliate has responded to a government document subpoena in this litigation. Accordingly, Plaintiff interprets the request, together with the April 29 e-mail, as a request for Plaintiff to attempt to obtain additional documents from the relevant Swiss affiliate of Deloitte.

Plaintiff sought to obtain the requested documents directly from the Swiss affiliate of Deloitte.  Deloitte has refused to produce the requested documents unless compelled to do so pursuant to a statutory or regulatory obligation or an order of the relevant Court.  Accordingly, Plaintiff does not possess, and has been unable to obtain, documents responsive to this request.

Respectfully submitted this 6th day of June, 2008.


PLAINTIFF

CHEMTECH ROYALTY ASSOCIATES, L.P., by
DOW EUROPE, S.A., as Tax Matters Partner

CHEMTECH II, L.P., by
IFCO, INC., as Tax Matters Partner


David M. Bienvenu, Jr.
TAYLOR, PORTER, BROOKS & PHILLIPS
Post Office Box 2471
Baton Rouge, LA  70821
Telephone:  (225) 387-3221
Facsimile:  (225) 346-8049


John B. Magee
Hartman E. Blanchard, Jr.
MCKEE NELSON LLP
1919 M Street, N.W., Suite 200
Washington, D.C.  20036
Telephone:  (202) 775-1880
Facsimile:  (202) 775-8586

4

**CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of June, 2008, the foregoing PLAINTIFF'S

RESPONSES TO UNITED STATES' THIRD REQUEST FOR PRODUCTION OF

DOCUMENTS was served, by overnight mail, on

      John J. Gaupp, LBN 14976
      Assistant United States Attorney
      777 Florida Street, Suite 208
      Baton Rouge, Louisiana 70801
      Local Counsel

      Deborah M. Morris
      Trial Attorney, Tax Division
      U.S. Department of Justice
      555 Fourth Street, N.W.
      Washington, D.C.  20001

                    Hartman E. Blanchard, Jr.



U.S. Depart. at of Justice

**Tax Division**

*Civil Trial Section, Southern Region*

| | | |
|---|---|---|
| Trial Attorney: Thomas F. Koelbl | Mailing Address: | Street Address: |
| Attorney's Direct Line: (202) 514-5891 | P. O. Box 14198 | 555 4th Street, N.W., Suite 6223 |
| Facsimile Nos. (202) 514-4963 or 514-9868 | Washington, D.C. 20044 | Washington, D.C. 20001 |

TFKoelbl
5-32M-1449
CMN 2005105376

June 20, 2008

<u>By facsimile (202-879-5353) and regular mail</u>
Eric Witiw
Deloitte & Touche USA LLP
555 12th Street NW, Suite 500
Washington, DC 20004-1207

   Re: Chemtech Royalty Associates, L.P. v. USA
      <u>Case No. 05-944-C-M3</u>    (M.D. La.)

Dear Mr. Witiw:

   I am writing regarding Deloitte's response to the subpoena issued to it in the above-referenced case. We believe that Deloitte's response was inadequate and are attempting, pursuant to Fed. R. Civ. P. 37(a)(1), to obtain a sufficient response.

   First, it is our understanding, based on the documents you produced to us and on communication with the plaintiff's counsel, that you are refusing to produce responsive documents that are located at Deloitte's Zurich office. As you know, the mere fact that documents are located outside the United States in no way exempts you from your duty to produce responsive documents. Accordingly, you must produce all responsive documents located at Deloitte's Zurich office immediately.

   Second, on January 11, 2008, you sent us a privilege log containing entries for three responsive documents not produced by Deloitte because the plaintiff claimed that these documents are protected from disclosure by the attorney-client privilege, the work-product doctrine, and/or the tax practitioner's privilege. Voluntary disclosure of privileged communications to third parties destroys the attorney-client privilege. Similarly, documents disclosed to a "potential adversary," such as an independent auditor, are not protected by the work-product doctrine or the tax practitioner's privilege. Thus, the three documents at issue are not protected by the attorney-client privilege, the work-product doctrine, or the tax practitioner's privilege must be produced immediately.

GOVERNMENT
EXHIBIT
7

As our deadline for filing motions to compel is June 30, 2008, please let us know by June 26, 2008 whether you will provide us with these documents. If you still refuse to produce them, please let us know your reasons for that refusal. If you have any questions, please contact me at the above number.

Sincerely yours,

Thomas F. Koelbl
Trial Attorney, Civil Trial Section
Southern Region

cc:
Eric R. Skinner
Associate Area Counsel (LMSB)
Internal Revenue Service
PO Box 330516 Stop 31
Detroit, MI 48232-6516

David R. Dugas
United States Attorney
Middle District of Louisiana
777 Florida Street, Suite 208
Baton Rouge, Louisiana 70801
        Attn: John Gaupp, AUSA

# Deloitte.

Deloitte LLP
Suite 500
555 12th Street N.W.
Washington, DC 20004-1207
USA

Tel: +1 202 879 5600
Fax: +1 202 879 5353
www.deloitte.com

June 26, 2008

Via Facsimile and US Mail
Thomas F. Koelbl, Trial Attorney
U.S. Department of Justice, Tax Division
Civil Trial Section, Southern Region
P.O. Box 14198, Ben Franklin Station
Washington, D.C.  20044

Re:     *Chemtech Royalty Associates, LP v. USA*
        *Case No. 05-944 (M.D. La.)*
        Subpoena addressed to Deloitte & Touche USA, LLP

Dear Mr. Koelbl:

I write regarding our conversation about the subpoena addressed to Deloitte & Touche USA, LLP in the above referenced matter and your June 20, 2008 letter about documents that my be in Switzerland.  Your letter is premised on your belief that one of the Deloitte US Firms is "refusing to produce responsive documents that are located at Deloitte's Zurich office." According to your letter, this belief is based on the documents produced in response to the subpoena by Deloitte & Touche LLP and communication with plaintiff's counsel.  You also raise an issue about documents over which the plaintiff claims a privilege.

For your information, Deloitte & Touche USA LLP was recently renamed Deloitte LLP. Deloitte LLP is a member of the Deloitte Touche Tohmatsu ("DTT") organization.  DTT is an association of member firms that are legally independent of one another.

Deloitte LLP is a Delaware limited liability partnership that does not provide services to clients.  Deloitte & Touche LLP – also a Delaware limited liability partnership - is the Deloitte LLP subsidiary that provides audit services to clients.

On December 21, 2007, Deloitte & Touche LLP produced to you 2910 pages of responsive documents.  As we discussed, the documents produced include a preliminary draft of an auditor's report of Deloitte & Touche AG and other correspondence and memos from Deloitte & Touche AG that were obtained by, and in the possession of, Deloitte & Touche LLP during the normal course of providing services related to the plaintiff.  Although sometimes referred to as D&T Zurich in the documents produced to you by Deloitte & Touche LLP, as I indicated to you Deloitte & Touche AG is a separate and independent legal entity from Deloitte & Touche LLP in which neither Deloitte LLP nor Deloitte & Touche LLP have any ownership interest and over which neither Deloitte LLP nor Deloitte & Touche LLP exercise any control.  In sum, although Deloitte &



GOVERNMENT
EXHIBIT
8

Member of
Deloitte Touche Tohmatsu

Touche LLP produced documents in its possession originating from the DTT Switzerland member firm or one of its affiliates, Deloitte & Touche LLP does not exercise control over information possessed by that other separate and independent legal entity. Moreover, we are not suggesting or implying that the DTT Switzerland member firm has documents that are responsive to the subpoena.

Although I believe that the Deloitte US Firms have satisfied their obligations as non-parties under Federal Rule of Civil Procedure 45, in an earlier conversation with your colleague Brian Harris about information that may be located in Switzerland, I offered to provide to the government a contact person at DTT to facilitate your communication with someone at or authorized to communicate on behalf of the DTT member firm in Zurich. I understand that rather than pursuing this matter directly with the DTT member firm in Zurich, the defendant requested that counsel for plaintiff pursue this information. I understand that plaintiff's counsel did communicate directly with the DTT member firm in Zurich, but did not obtain any additional documents.

With respect to the information which plaintiff claims is privileged, we cannot resolve the conflict between your position and plaintiff's position.

Please contact me if you would like to discuss this matter further. I can be reached at (202)879-5662.

Sincerely,

Eric Witiw
Assistant General Counsel

Cc: Hartman Blanchard, Esq.

*faxed 11/5/93*

# Deloitte & Touche

△

# Memo

*RV - 3/wm*

*MJM 11/5/93*    *M 3/24/94*

*Fic - Zurich*

Date:       November 5, 1993

To:         ZURICH, Klaus Amstad

From:       MIDLAND, Leo L. Kessel

Subject:    Chemtech Royalty Associates, L.P.

In 1993 Dow formed Chemtech Royalty Associates, L.P. ("Chemtech"). Dow Europe S.A. is the general partner of Chemtech. Through the current date, Dow Europe S.A. has sold 20% of the entity in the form of limited partnership interests to unrelated parties.

Chemtech's primary income stream will be the royalty payments it receives from Dow U.S.A. for patents owned by Chemtech.

For additional background, attached is the disclosure of the transaction included in Dow's June 30, 1993 Form 10-Q.

We have been advised by Dow management that Chemtech will have a separate audit requirement for which D&T Zurich will be engaged by Dow Europe S.A. to perform. In connection with such audit requirement, we expect that you will require D&T Midland to test the royalty payments due from Dow to Chemtech under the terms of the license agreement. We are currently working with internal audit to develop an audit approach for such royalty payments. When finalized, we will advise you of the timing of such procedures in order to confirm that our timing will meet your requirements for your separate audit of Chemtech.

If you have not done so, I recommend you discuss with local management the proposed engagement for Chemtech. Our appointment as auditors for Chemtech may be outlined in the partnership agreement. To date, however, we have not received the final copy of this. You should request copies of the agreements for your audit files directly from Swiss management.

Form 629 (Rev. 7/80)

GOVERNMENT EXHIBIT 9

CONFIDENTIAL
DT002508



Klaus Amstad  -  Chemtech Royalty
November 5, 1993
Page 2


Once you have met with Chemtech's management, please confirm that you require the
royalty payments due from Dow to be audited to a separate Chemtech materiality.  Also,
please advise what materiality level we should use in our testing of royalty payments and
any other procedures you will require us to perform.  With that information, we can
develop and provide you with a fee estimate for our participation in this audit for your use
in discussing an overall fee estimate with Swiss management.

Your contact at Dow Europe S.A. regarding this matter should be Werner Gass.

Should you have any questions, please contact me at (517) 636-3381.



Attachment

cc:  Carol Ashley, The Dow Chemical Company

CONFIDENTIAL
DT002509

11/29/1993  08:05  D2T Saginaw  UF-400 xxxx       06610429  P.02
25/11 '93 11:33  TF#1 1 422 88 38       D & T  ZERICS        @001/002

## Deloitte & Touche

## Memo

Date:      November 24, 1993

From:      Khrs Amszd / Sam Chaudhri - Zerich

Subject:   Chemtech / Dow

To:        Leo Kessel / Mike Morrissey - D&T Midland/Saginaw

Further to your memo dated Nov 5, 1993 we have met with Swiss management of the Chemtech operations at Dow Europe in Horgen. The following matters will be relevant to you and in particular would assist us in our audit of the Chemtech operations.

1. Our audit appointment is outlined in the Agreement. We are to express an audit opinion on the annual financial statements of Chemtech Royalty Associates LP (Chemtech).

2. The records of Chemtech Portfolio Inc (CPI), the subsidiary, are also kept in Horgen, and although there would appear to be no legally or contractually imposed audit for this entity we agreed to perform the audit as it is important for us to assess where the excess funds of Chemtech are invested, the return and valuation of such assets in order for us to express an opinion on the financials of Chemtech.

3. We are to render a fee budget to Horgen which includes your costs for assisting us.

4. The MMD entity agreements are not yet finalized and hence we will need to address this matter later. Please note that the MMD entity records are in Bermuda at the moment.

5. Based on our enquiries to date and review of the preliminary figures and records we require your assistance in the following areas:

    a) value of the patents contributed by Dow /Diamond to Chemtech of approx $ 857 million. Also that each year this value (as amortized) can be justified in the balance sheet of Chemtech. You need to perform tests to ensure that the patents included are all valid and "alive" and have a value;

    b) audit the royalty payments from TDCC - expected to be approx $ 95 million for period to 31.12.93.

    c) audit of the collectibility of intercompany loans to be granted to Dow entities by CPI.

We determined that MP for the audit of Chemtech to be $ 260,000 for 1993.

GOVERNMENT
EXHIBIT
10

CONFIDENTIAL
DT002512

11/29/1993  03:06  D&T Seginus  UF-400 xxxx                06618428  P.04

Please send us your estimate of charges which we will include with ours when rendering the overall fee proposal to Horgen.

6. The Agreement requires that we audit the "partnership basis" financial statements annually. This report is then open to all partners, banks etc. and forms the basis of the "legal / statutory" financials. We have not been able to determine whether the internal US gaap financials are also to be audited. Can you find out from TDCC their expectations, as we would then need to consider this in our fee budget.

If you have any questions please feel free to call us.

Best regards,

TOTAL P.04

CONFIDENTIAL
DT002513

**Deloitte &
Touche**

**Memo**

Date:       December 7, 1993

To:         Klaus Amstad / Sam Chaudhuri, ZURICH

From:       Leo Kessel, SAGINAW

Subject:    Chemtech Royalty Associates L.P.

In response to your memo dated November 24, 1993, we confirm that we will perform
the following procedures to assist you in your audit of Chemtech Royalty Associates
L.P. ("Chemtech"):

- We will perform procedures necessary to test royalty payments for 1993 due
  Chemtech under the terms of the Patent License Agreement between Chemtech
  and The Dow Chemical Company. As 1993 is the initial year, the procedures
  performed will, by necessity, be more extensive in order to document and test
  Dow's methodologies and procedures for determining such amounts.

- We will perform procedures necessary to assess potential impairment of the
  patents included in the Patent License Agreement. The existence and initial
  valuation of the patents contributed to the partnership should be supported by an
  outside analysis and appraisal. D&T Zurich should obtain a copy of this
  document directly from Chemtech personnel in Zurich and perform whatever
  procedures they consider necessary.

- We will assist D&T Zurich in assessing the collectibility of intercompany loans
  extended to Dow entities by Chemtech Portfolio Inc. D&T Zurich should send
  information relating to which entities such loans are extended to D&T Saginaw
  and we will perform the appropriate procedures to ensure such amounts are
  recorded and are not disputed by Dow.

To perform the above procedures in the initial year of the agreement, we estimate
charges of approximately $22,000. This estimate has been reduced for anticipated
assistance of Dow's Internal Audit Department which has been agreed locally. We
would estimate the recurring fees for the above procedures would approximate $15,000.

Deloitte Touche
Tohmatsu
International



CONFIDENTIAL
DT002514

Chemtech Royalty Associates L.P. _____    Page 2

Regarding the issue of basis of the financial statements (i.e., partnership v. U.S. GAAP), we note in Section 8.2 of the Amended and Restated Agreement of Limited Partnership of Chemtech Royalty Associates, L.P. that the financial statements are to be prepared in accordance with accounting principles generally accepted in the United States. We have discussed this matter with Dow management in Midland who advise this section to be in error with the intention that any financial statements be prepared solely on the partnership basis. As the basis of the financial statements does not impact the scope of our procedures, we refer this matter to you for follow-up with the general partner to determine on what basis your report will be issued.

Unless you require clearance on the above audit procedures at an earlier date, we expect to complete our procedures by March 15, 1993.

Please contact us if you require any further assistance in this matter.

CONFIDENTIAL
DT002515

**Deloitte &
Touche**

| | |
|---|---|
| Zollikerstrasse 228 | Telephone (01) 422 42 40 |
| CH-8008 | Telefax Audit + MCS (01) 422 86 36 |
| P.O. Box 629 | Telefax Tax + Legal (01) 391 29 68 |
| CH-8034 Zürich | |

# TELEFAX MESSAGE                        December 13, 1993

TO:                    Leo Kessel

COMPANY:            D&T Midland

FAX # :               001-517-832-9850

FROM:                Bruce Herard

# OF PAGES:         ___ 2
(INCL. COVER SHEET)

SUBJECT:           Chemec Fee Estimate

MESSAGE:

The fee estimate for Chemec for 1993/1994 is as follows:

| 1993 | U.S. $ |
|---|---|
| D&T Midland | 22,000 |
| D&T Zurich | 15,500 |
| | 37,500 |

| 1994 | |
|---|---|
| D&T Midland | 15,000 |
| D&T Zurich | 12,000 |
| | 27,000 |

We are ready to provide the client the Chemec fee estimate. However, you indicated to me earlier that we should review together the overall fee before it is discussed with the client. Would they expect a larger fee for the Swiss work? If so, do you have any idea what we should propose?

On another matter, have you had any thoughts on how we should go about recovering

If you have not received the number of pages indicated on the cover sheet, or if they are illegible, please call us immediately under Tel: 01/422 42 40.

GOVERNMENT
EXHIBIT
12

CONFIDENTIAL
DT002516



**TELEFAX MESSAGE (CONTINUED)**

professional charges and expenses related to time I spend on SAP/re-engineering the Dow D&T audit.

Best regards,

Bruce Heard

If you have not received the number of pages indicated on the cover sheet, or if they are illegible, please call us immediately under Tel: 01/427 47 41.

CONFIDENTIAL
DT002517



**Deloitte & Touche**

# Memo

Date:      December 13, 1993

To:        ZURICH, Bruce Herard

From:      MIDLAND, Leo Kessel

Subject:   Chemtec Fee Estimate

Dear Bruce,

The fees you have indicated can be reviewed with the client.

I would not expect the Swiss fee to be higher, especially since the client will be preparing the tax returns. The significant audit area is related to the royalties received. All other accounts would appear to be very straightforward.

For your information, Kansas City will be contacting you regarding the Marion intangibles projects. I believe there are two entities requiring audit.

With respect to SAP, I expect to develop an approach to recover fees and expenses when we start working on the audit approach next spring. To date, I am not sure what form that will take.

Best wishes for the holiday season to Susan and the children.

Regards,

Leo L. Kessel

Deloitte Touche
Tohmatsu
International

GOVERNMENT
EXHIBIT
13

CONFIDENTIAL
DT002518

02/01/1994  09:21  IGT Saginaw  UF-400  06610428  P.04
01/02 '94  11:47  ☎41 1 422 86 36  D & T ZÜRICH  @001/00

## Deloitte & Touche

|  |  |
|---|---|
| Zollikerstrasse 225 | Telephone (01) 422 42 40 |
| CH-3008 | Telefax Audit 4  MCS (01) 422 05 38 |
| P.O. Box 839 | Telefax Tax + Legal (01) 231 25 68 |
| CH-8034 Zurich |  |

# TELEFAX MESSAGE                February 1, 1994

TO:                Leo Kessel

COMPANY:           D&T Saginaw USA

FAX #:

FROM:              Sam Chaudhuri

# OF PAGES:        4
(INCL. COVER SHEET)

SUBJECT:           Chemtech Royalty Assoc LP
                   Centerm Capital LP

MESSAGE:

There appears to be some confusion about the type of audit report D&T are expected to
issue on the IF entities. Different officials appear to have different requirements, and as
the Agreement is suitably vague, the form of financials and our report thereon is open to
interpretation.

Local Chemtech management in Switzerland expects us to issue a "Swiss style" report for
the 2 Chemtech entities. See attached draft auditors report.

On the other hand see memo received from D&T Kansas City on the Centerm entities
(attached) where MMD corporate legal counsel - Jim Jeffs expects US gaap reports from
us.

If we are to issue US gaap reports the costs will be much higher (US gaas, Gaap
disclosures etc.,) Can you help us to resolve this matter as otherwise our fee budgets will
be meaningless if we do not know the scope.

Regards,

If you have not received the number of pages indicated on the cover sheet, or if they are
illegible, please call us immediately under Tel: 01/422'42'40.

Page 1

TOTAL P.04

GOVERNMENT
EXHIBIT
14

CONFIDENTIAL
DT002522

**Deloitte &
Touche**

# Memo

Date:       February 3, 1994

To:         ZURICH, Sam Chaudhuri

From:       MIDLAND, Leo Kessel

Subject:    Chemtech Audit

This will confirm Dow's instruction that your audit of Chemtech be a "Swiss" statutory audit.

Kansas City is reviewing this matter with MMD for Carderm and will advise you directly of the results of its discussions.

Please contact me if you require further information.

Regards,

Leo L. Kessel

c:  Carol Ashley, Assistant Controller, The Dow Chemical Company
    Jeanne McGovern, Deloitte & Touche, Kansas City

Deloitte Touche
Tohmatsu
International

GOVERNMENT
EXHIBIT
15

CONFIDENTIAL
DT002526

14.03.95  21:26    DELOITTE & TOUCHE EXPERTA ZÜRICH → 517 832 9830        NR.877



# Fax Transmission

**To:**                                          **Office / Company:**

Brian McAllister                                 D&T, Midland

**Fax Number:**

+1(517)832 -9830

**From:**                                        **Office:**

James D. Horiguchi                               Zürich-Erlenbach

**Fax Number:**                                  **Number of Pages (including this one):**

+41 1 914 2233                                   1

**Date:**                                        To confirm receipt, or if you do not receive all pages, please call:

March 14, 1995                                   +41 1 914 2222

**Comments:**

In connection with our audit of Chemacch Royalty Associates, L.P., the local client has inquired whether it would be possible to issue the Chemacch reports prior to the end of March in order to coincide with Pedro Reinhard's presence in Europe on another matter (versus having to have him come back in April when we were expected to issue the reports).

In your memo to us dated March 1, 1995, you indicated that you anticipated being able to begin performing the final audit procedures necessary to provide us with clearance of various matters sometime after March 3, 1995. Therefore, we would appreciate it if you could let us know what the current status is and provide us with an expected timetable for completion of your work so that we can inform the client as to the possibility of accommodating their request.

If you need any information let me know.  I hope all is well and beginning to settle down!

Best regards,

Confidentiality Notice: This page and any accompanying documents contain confidential information intended for a specific individual and purpose. This telecopied information is private and protected by law. If you are not the intended recipient, you are hereby notified that any disclosure, copying or distribution, or the taking of any action based on the contents of this information, is strictly prohibited.

Deloitte Touche                                  Global Leaders in
Tohmatsu                                         Accounting and Auditing,
International                                     Management Consulting
                                                 and Tax Services

GOVERNMENT
EXHIBIT
16

CONFIDENTIAL
DT002641

·610.6
JK 3/14/95

**Deloitte &
Touche LLP**

△

# Memo

Date:     March 14, 1995

To:       Zurich, James Horiguchi

From:     Midland, Mike Kenan

Subject:  **The Dow Chemical Company
          Chemtech**

In response to your memorandum dated March 14, 19995 to Brian McAllister, please be advised that Leo and I are reviewing the working papers relating to the royalty computations and should be able to report to you by the end of this week. I hope this meets your time frame.

Also, we are meeting on March 15, 1995 with Dow to discuss the form of Chemtech Royalty Associates, L.P.'s financial statements (i.e., statutory vs. U.S. GAAP) for 1995. If you have had any discussions locally regarding this I would be interested in knowing the details.

Call me at 517-636-6004 if you have any questions or concerns. Hope things are going well.

Deloitte Touche
Tohmatsu
International

GOVERNMENT
EXHIBIT
17

CONFIDENTIAL
DT002642

**Deloitte & Touche**
**Experta**

# Memo

Date:     March 19, 1996

To:        Leo Kessel / Mike Kanan - Midland

From:    Bruce Herard - Zurich

Subject:  *Chemtec Royalty Associates, L.P.*

Enclosed for your review are the 1995 U.S. GAAP consolidated financial statements for Chemtec Royalty Associates, L.P. (1994 enclosed for comparison).

With respect to footnote 4 (notes receivable), I would appreciate it if you would review the interest rate term disclosure with someone in Dow Midland treasury to see if I have interpreted the contract terms appropriately (contract terms attached).

We also require from you as soon as possible:

1   Confirmation of the balance of the loan and accrued interest granted by CPI to DCIL.
2   Client representation in the format you obtained and provided for 1994.

I would appreciate your comments By March 22.  We need to issue the report early next week.  Please respond to the Zurich office.

Best regards,

Bruce Herard

Enclosures

cc:

GOVERNMENT
EXHIBIT
18

CONFIDENTIAL
DT001877

Author: Michael Kanan at DTT.US.MIDLAND
Date:   3/22/96  10:01 AM
Priority: Normal
Receipt Requested
TO: Bruce Herard at DTT.SWITZERLAND.HUB
TO: Riemy van Caan at DTT.EUROPE.DOW
Subject: Chemtech
---------------------------------- Message Contents --------------------------

Further to Bruce's memo to Leo and me dated 19 March 1996, we hereby
confirm with out exception the balance of the loan granted by CPI to
DCIL to be $476,969,104.  We are unable to confirm the accrued
interest.  DCIL has zero recorded on its books.  Perhaps the accrued
interest is in part related to investment securities.

The client in Midland is still in process of reviewing the financial
statements.  We will pass on our comments on to you once we receive
comments from Dow in Midland.

We will also send you the rep letter shortly.  *Rep letter faxed 3/21/96*

If you have any questions, please call me.

Mike Kanan

GOVERNMENT
EXHIBIT
19

CONFIDENTIAL
DT001878

# Deloitte & Touche LLP

# Memo

Date:       04/21/95
To:         Klaus Amstad, ZURICH
From:       Leo Kessel, MIDLAND
Subject:    Chemtech US GAAP Financial Statements

The remaining items which do not appear to be changed in the US GAAP Chemtech financial statements are as follows:

1. The audit opinion should include reference to the Statement of Partners' Equity as the audit opinion would encompass this statement. See the changes suggested on the opinion.

2. The amounts included in the statement of Partners' Equity do not agree with the same captions in the statement of cash flows? I would normally think that such amounts would be in agreement.

3. With respect to the FAS 115 disclosure included in Footnote 4, reference is made that the marketable securities are held to maturity. FAS 115 allows this classification for debt securities such as US Treasury Bills, however the year end reporting package indicates that purchases and sales of these securities during the year totaled over $460 million. Apparently, they must purchase Treasury Bills with a very short maturity rather than sell these securities as liquidity needs arise? Given the turnover, an alternate accounting treatment could be to classify these securities as cash equivalents, which is their classification in the Dow financial statements. As the fair value difference of $104,000 is immaterial, however, we do not object to the classification as a marketable security if that is how the Company is managing the portfolio. Please reference the year end reporting schedules of CPI which indicates this information.

4. The statement of cash flows has not been changed to reflect gross vs. net presentation. It would appear that your interpretation must be that net disclosure is allowable under FAS 95, paragraph 13, as amended by FAS 104. If that is the reason, the classification seems appropriate.

Please make the changes indicated on the enclosed page 5 of the financial statements and the changes required by items 1 and 2 above. If the circumstances for items 3 and 4 are in accordance with GAAP, no further action is required.

Deloitte Touche
Tohmatsu
International

GOVERNMENT
EXHIBIT
20

CONFIDENTIAL
DT002706

**Deloitte & Touche
Experta**

△

# Memo

| | |
|---|---|
| Date: | March 13, 1997 |
| To: | Bob Cox/Brian McAllister - Midland |
| From: | Bruce Herard, Zurich |
| Subject: | *Chemtec Royalty Associates, LP* |

### Background

Chemtec Royalty Associates, LP ("Chemtec") distributed parent assets (portfolio nos. 14.2, 14.3 and 15.2) to Diamond Technology Inc. ("DTI") on January 3, 1997. DTI is a subsidiary of The Dow Chemical Company.

Chemtec's partnership agreement requires that a distribution of partnership assets is reflected in the partners' capital accounts at fair market value. Further, Chemtec must present a statement of partners' capital to the partners as of the date of distribution. This statement of partners' capital must be audited.

Chemtec's partnership basis of accounting financial statements are presented in accordance with Swiss GAAP. Swiss GAAP has been used since the partnership's inception in order that fair value accounting can be utilized for certain partnership transactions as specified by the partnership agreement.

In accordance with the above requirements, we will audit Chemtec's statement of partners' capital accounts as of January 3, 1997. This statement reflects the fair value of the distribution at U.S. $ 179.2 million. The fair value of the assets distributed to DTI was determined by Arthur D. Little, Inc. The appraisal is attached.

Most of the data which Arthur D. Little, Inc. used to determine its appraisal was provided by Dow personnel in Midland. Bill Curry, Horgen tax department, has advised me that Bruce Kanuch, Patent department, and Ed Valenzuela, Corp. Tax department, are the contact people for Dow's input in the appraisal process.

The remainder of this memorandum requests your assistance with performing audit procedures relating to the appraisal.

Deloitte Touche
Tohmatsu

GOVERNMENT
EXHIBIT
21

CONFIDENTIAL
DT002392

(3)

March 12, 1997                                                              Page 2
Bob Cox/Brian McAllister - Midland
Chemtec Royalty Associates, LP

Audit Procedures

Please perform the following audit procedures relating to the appraisal:

1.  Dow's Perspective; page 5, no. 5. - Determine if the stated 38% income tax rate
    for Dow is reasonable.

2.  Discount Rate; page 7, F.1. - Determine if the stated yield to maturity rate of 5.4%
    on five year U.S. treasury securities is reasonable. We will determine if the five
    year period is reasonable in relation to the average patent lives of the patent assets
    taken as a whole.

3.  Discount Rate; page 8, F.2. - Review the reasonableness of the Dow discount rate
    of 9.22% with Dow treasury personnel and other Dow personnel as you consider
    appropriate.

4.  Discount Rate; page 8, F.3. - Review the reasonableness of the investor discount
    rate of 8.45% with Dow treasury personnel and other Dow personnel as you
    consider appropriate. Inquire as to the reasonableness that the Dow discount rate
    is higher than the investor discount rate.

5.  Chemical Industry Environment; page 9 - Review the reasonableness of the
    product pricing information with appropriate Dow personnel.

6.  Chemical Industry Environment; page 10 - Review the reasonableness of the raw
    material assumptions with appropriate Dow personnel.

7.  Chemtec Valuation Spreadsheet Printouts - Review the investor perspective and
    Dow perspective analyses with appropriate Dow personnel. These spreadsheets
    summarize the cashflow data that was used to develop the appraisal values. Gain
    an understanding of the elements in the spreadsheet, determine if documentation
    exists to support this summary data, and through observation and discussion with
    appropriate Dow personnel determine if the cash flow data reflects the pricing and
    raw material assumptions at pages 9. and 10. of the appraisal.

8.  Chemtec Valuation Spreadsheet Printouts; Amortization of Tax Shield for Investor
    Perspective" - Part of the value attributed to the distributed patents is $58.6 million
    of tax benefit that would be derived from the amortization of the patents. Discuss
    with Ed Valenzuela the methodology and assumptions used to derive the value
    attributable to the tax benefit. Consider whether the methodology and assumptions
    are consistent with the other elements of the valuation which you have reviewed.
    Consult with a tax specialist if technical issues are encountered.

9.  Prepare a summary memorandum describing your conclusions.

A budget of 16 hours, senior accountant, and 4 hours senior manager, have been
estimated for the performance of the above procedures. Accordingly, your fee for the
above audit procedures will be $3080 (16 hours @ 130= 2,080+4 @ 250=1,000).

CONFIDENTIAL
DT002393

March 12, 1997                                                          Page 3
Bob Cox/Brien McAllister – Midland
Chemtec Royalty Associates, LP

Please complete your procedures and provide your summary memorandum to Christine
Losson at Dow Drusenheim by March 25, 1997.

Please direct any questions or concerns regarding the above to me in the Zurich office.

Thank you for your assistance.

Attachment (appraisal)

CONFIDENTIAL
DT002394

**Deloitte &
Touche**

# Memo

| | |
|---|---|
| Date: | November 6, 1997 |
| To: | Bob Cox/Brian McAllister – Midland |
| From: | Jeffrey Swarmstedt/Christine Losson – Zürich |
| Subject: | Chemtech Royalty Associates, L.P. |

### Background

Chemtech Royalty Associates, LP ("Chemtech") distributed patent assets (portfolio nos 20.1A and 20.1B) to Diamond Technology Inc. ("DTI") on July 3, 1997. DTI is a subsidiary of The Dow Chemical Company.

Chemtech's partnership agreement requires that a distribution of partnership assets is reflected in the partners' capital accounts at fair market value. Further, Chemtech must present a statement of partners' capital to the partners as of the date of distribution. The statement of partners' capital must be audited.

Chemtech's partnership basis of accounting financial statements are presented in accordance with Swiss GAAP. Swiss GAAP has been used since the partnership's inception in order that fair value accounting can be utilized for certain partnership transactions as specified by the partnership agreement.

In accordance with the above requirements, we will audit Chemtech's statement of partners' capital accounts as of July 3, 1997. This statement reflects the fair value of the distribution at U.S.$ 35 million. The fair value of the assets distributed to DTI was determined by Arthur D. Little, Inc. The appraisal is attached.

Most of the data which Arthur D. Little, Inc used to determine its appraisal was provided by Dow personnel in Midland. Bill Curry, Horgen tax department, had advised us in January (previous patent distribution) that Bruce Kanuch, Patent department, and Ed Valenzuela, Corp. Tax department, are the contact people for Dow's input in the appraisal process.

The remainder of this memorandum requests your assistance with performing audit procedures relating to the appraisal.

Deloitte Touche
Tohmatsu
International

GOVERNMENT
EXHIBIT
22

CONFIDENTIAL
DT002401

<u>Audit procedudres</u>

Please perform the following audit procedures relating to the apprasal:

1. Dow's perspective page 6 - Determine if the stated 38% income tax rate for Dow is reasonable.

2. Discount rate page 8 - Determine if the stated yield to maturity rate of 6.57% on ten year U.S. Treasury notes is reasonable.

3. Discount rate page 9 - Review the reasonableness of the Dow discount rate of 9.22% with Dow treasury personnel and other Dow personnel as you consider appropriate.

4. Discount rate page 9 - Review the reasonableness of the investor discount rate of 8.61% with Dow treasury personnel and other Dow personnel as you consider appropriate. Inquire as to the reasonableness that the Dow discount rate is higher than the investor discount rate.

5. Chemical Industry Environment pages 10 and 11 - Review the reasonableness of the product pricing information and raw material assumptions with appropriate Dow personnel.

6. Prepare a summary memorandum describing your conclusions.

A budget of 16 hours, senior accountant, and 4 hours senior manager, had been estimated for the performance of the same procedures in March 1997 (distribution of 3 patents as of January 3, 1997): we expect the above described audit procedures to be performed with the same budget. Accordingly, your fee for the above audit procedures would be $ 3,000.

Please complete your procedures and provide your summary memorandum to Christine Losson at Dow Drusenheim by November 14, 1997.

Thank you for your assistance.

Attachment (apprasal)

a. Sas Personen Personnel

b. Sas Sources Hans Co

CONFIDENTIAL
DT002402



## Deloitte & Touche

# Memo

**Date:** December 8, 1997

**To:** Jeff Swormstedt, Zurich

**From:** Doug Minder, Midland

**Subject:** Chemtech Royalty Associates, LP

D&T Midland was requested by the D&T Zurich office to perform certain audit procedures relating to patent assets (patent numbers 20.1A and 20.1B) distributed by Chemtech Royalty Associates to Diamond Technology (DTI, a Dow Subsidiary). The requested procedures are described in the memo dated November 6, 1997 located at 9200.00. This memo serves as a summary of the audit procedures performed by D&T Midland.

*Background:*

Chemtech distributed patents to DTI on July 3, 1997. Arthur D Little was asked to estimate the fair market value of the patents as of that date. They performed an analysis dated July 3, 1997 which is included within these workpapers which estimated the market value at $35 million based on a variety of assumptions, some of which were provided by Dow personnel in Midland. The following describes the results of the procedures performed as requested by D&T Zurich.

*Procedures:*

1. We inquired of Dow personnel within the Tax and Treasury departments (Ed Valenzuela and Stephan Koch respectively) about the reasonableness of the income tax rate of 38% used by Arthur D Little. We noted that this rate is equal to the internal rate used by Dow in its analysis and also approximates both the statutory rate and the effective tax rate of 36% as disclosed in the TDCC 1996 Annual Report. Based on our procedures performed, the 38% tax rate appears reasonable for use as the marginal rate for federal and state taxes.

2. We compared the yield to maturity (YTM) on the ten year Treasury notes of 6.57% as used by Arthur D Little to the Wall Street Journal for July 1, 1997 noting that the YTM on the US Treasury Note maturing in May 2007 was 6.51%. Accordingly, the ten year US T-note rate of 6.57% appears reasonable.

3. Dow's WACC was calculated by Arthur D Little to be 9.22% based upon several parameters (debt to equity, tax rate, debt interest rate, etc). We noted that Dow's internal WACC rate is 10.75% based upon discussions with Stephan Koch, Dow Treasury. The major differences in the calculations relate to the YTM and the Beta used. Arthur D Little used the YTM that most closely relates to the ten year patent in their analysis while Dow uses their whole yield curve in their calculation. Additionally, Arthur D Little used a Beta of 1 in estimating the WACC while Dow uses approximately 1.2 according to Stephan Koch. If the Arthur D Little calculation is adjusted to reflect Dow's Beta, the result is approximately 10.72%. It was noted per discussion with Stephan Koch that the Beta can change dramatically based upon what is used as the basis and over what time period (one year vs. five years). We noted that the current Beta versus the S&P 500 is .65 according to Bloomberg. Based on the above, the Beta of one used by Arthur D Little appears reasonable in estimating the WACC.

Based on the results of the procedures we performed, the WACC rate calculated by Arthur D Little appears reasonable for use in this calculation.

Deloitte Touche
Tohmatsu
International

GOVERNMENT EXHIBIT 23

CONFIDENTIAL
DT002421



Chemtech Royalty Associates, LP                                        2

4.  We recalculated the WACC for the hypothetical investor noting that the YTM was the same for both Dow
    and the investor. The only differences were in the Tax rate and the Debt to Equity ratio. The difference in the
    tax rate appears reasonable based on Arthur D Little's assumption that they are in a tax free state and would
    therefore have lower tax rate. As the investor is assumed to be a financial entity and not a chemical
    company, it would presumably have a different yield curve than Dow and as such the YTM may be different
    than the 6.93% (as calculated by D&T Midland) used in the calculation. The change in the yield would be
    based upon the difference in the industry environment and the difference in the Debt to Equity ratio between
    Dow and the investor company. Arthur D Little has assumed that the YTM rate is the same based on the
    assumption that both companies have the same S&P debt rating and they are looking strictly at the ten year
    duration. This assumption appears reasonable for purposes of the estimate.
    Based on the procedures performed, the investor WACC rate calculated by Arthur D Little appears
    reasonable.

5.  The market conditions described by Arthur D Little in pages 10 and 11 of the valuation were discussed with
    Dow personnel and compared with industry magazines noting that the information obtained appeared
    consistent with the underlying assumptions used by Arthur D Little. We are aware of no information that
    would materially differ from Arthur D Little's evaluation assumptions which appear reasonable for use in the
    evaluation.

*Conclusion:*
Based on the procedures described above, the assumptions used by Arthur D Little in calculating the estimated
fair market value of the patents distributed by Chemtech appear reasonable.

CONFIDENTIAL
DT002422

Author: dow_chemical at DTT.US.SAGINAW
Date: 4/20/95 11:05 AM
Priority: Urgent
Receipt Requested
TO: Klaus Amstad at DTT.SWITZERLAND.HUB
TO: Bruce Herard at DTT.SWITZERLAND.HUB
Subject: Chemtech U.S. GAAP Financial Statements
———————————— Message Contents ————————————

Dear Klaus,

Please send us four copies of the issued Chemtech U.S. GAAP financial statements.

From your comments, I was not able to determine if the major U.S. GAAP reporting deficiencies we noted in our review were corrected prior to issuing the financial statements, e.g., Statement of Changes in Partners' Capital and Adoption of FAS 115.

These financial statements have a high visibility at Dow in Midland. This is why I specifically requested they be submitted for my review prior to issuance.

If they were issued prior to obtaining our input, please let me know the name of the partner who performed the U.S. GAAP concurring review prior to issuing the statements.

I recognize the need to meet client deadlines, but I place a much higher priority on making sure we are not embarrassed by issuing incorrect statements. I trust this did not happen for the 1994 U.S. GAAP Chemtech financial statements.

I look forward to your response.

Regards,

Leo Kessel

c: Bruce Herard

GOVERNMENT
EXHIBIT
24

CONFIDENTIAL
DT002718

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA
MISC. #

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| | ) | Civil Action No. 07-405-RET-DLD (M.D. LA) |
| v. | ) | |
| | ) | CONSOLIDATED WITH |
| DELOITTE & TOUCHE USA LLP, | ) | |
| | ) | Civil Action No. 05-944-RET-DLD; and |
| | ) | Civil Action No. 06-258-RET-DLD |
| | ) | |
| Respondant. | ) | |
| | ) | |

## ORDER GRANTING UNITED STATES' MOTION TO COMPEL DELOITTE & TOUCHE USA LLP TO PRODUCE DOCUMENTS

This cause came before the Court on the United States' Motion to Compel Deloitte & Touche USA LLP to Produce Documents. The Court has reviewed the record and all facts and circumstances in this case. It is

**ORDERED AND ADJUDGED** that the United States' motion to compel is

**GRANTED**. Deloitte & Touche USA LLP shall produce the three documents it has withheld from its response to the United States' subpoena. Additionally, Deloitte & Touche USA LLP shall produce all documents responsive to the United States' subpoena in the possession of its Zurich, Switzerland affiliate. These documents shall be produced within thirty days of the date of this order.

**DONE AND ORDERED** in Chambers at Washington, DC this _____ day of

_____, 2008.

_____
**UNITED STATES DISTRICT JUDGE**